IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN PRATER, | : | |
| | : | Case No. 2:14-CV-490 |
| Plaintiff, | : | |
| | : | JUDGE MARBLEY |
| v. | : | |
| | : | Magistrate Judge Kemp |
| THE LIVINGSTON AVENUE CHILD CARE, LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## OPINION & ORDER

This matter is before this Court on the following motions: (1) John Prater's (herein after "Plaintiff") Motion for Partial Judgment on the Pleadings, (Doc. 13); (2) The Livingston Avenue Child Care, LLC, Amazing Kidz Learning Academy, LLC, Tina Freeman and Mahogany McKinney's (herein after "Defendants") Motion for Sanctions, (Doc. 14); and, (3) Defendants' Motion to Dismiss. (Doc. 19). For the reasons set forth herein, Defendants' Motion to Dismiss is GRANTED; Plaintiff's Motion for Partial Judgment on the Pleadings is MOOT; and, Defendants' Motion for Sanctions is DENIED.

### I. BACKGROUND

#### A. Factual Background

The following facts relevant to this matter are taken from Plaintiff's Complaint. Plaintiff owns real estate in Columbus, and he rented a property to Freeman to operate Livingston Avenue Child Care, LLC ("LACC"). Plaintiff also loaned money to LACC to make improvements to the premises and convert it into a childcare center. Freeman guaranteed the note for the loan, which Plaintiff required because of LACC's lack of creditworthiness. McKinney also guaranteed the note for the loan. Unknown to Plaintiff at the time of the loan, Freeman allegedly is a convicted

1

felon with four previous felonies. Ohio Administrative Code 5101:2-12-26 prevents a convicted felon from owning and/or operating a child care center unless the person meets the rehabilitation standards. Plaintiff alleges that Freeman fraudulently induced him into the loan agreement that at the time of her loan proposal, she had no intention of performing.

Further, Plaintiff alleges that Freeman and McKinney conspired to use LACC and Amazing Kidz, both child care centers currently operated under Ohio law, to circumvent the Ohio prohibition against convicted felons being employed by child care centers, unless rehabilitated. Plaintiff further alleges that in order to obtain funds from the Ohio Department of Jobs and Family Services ("ODJFS"), Freeman used McKinney as a conduit for payments to herself.

Plaintiff alleges that Defendants conspired to devise a scheme to defraud Plaintiff to obtain money by false pretenses. He also alleges that a racketeering enterprise exists among Defendants unlawfully to obtain income for Freeman and McKinney from ODJFS, and that this enterprise operates through LACC and Amazing Kidz. The alleged goals of the racketeering enterprise are: (1) to operate facially legal entities, LACC and Amazing Kidz, to defraud the State of Ohio and individuals such as the Plaintiff; (2) attract clients by misrepresenting who operates and controls LACC and Amazing Kids; and, (3) to use funds illegally obtained from the state to enrich Freeman, circumvent Ohio law, and to avoid paying creditors, such as Plaintiff, by channeling funds through Amazing Kidz.

In addition, Plaintiff alleges that the enterprise has a substantial effect on interstate commerce because the enterprise: receives money through the mails and wires unlawfully from ODJFS and deposits that money into financial institutions engaged in interstate commerce; utilizes telephone calls and mail in the regular course of business to communicate within the

enterprise, and to obtain transfers of funds from ODJFS; and, used the wires to induce Mr. Prater into making a loan to LACC.

Plaintiff alleges, therefore, the Defendants committed the following predicate acts within the meaning of the federal RICO statute: placed telephone calls to Plaintiff fraudulently to induce him to make a loan to LACC; used Amazing Kidz to divert funds owned to LACC by ODJFS and to avoid payment to Plaintiff; used McKinney as a conduit to divert funds to Freeman, a person under Ohio law prohibited from working in any capacity at a childcare center.

Plaintiff alleges that he has been damaged by Defendants' violation of the federal RICO statute, 18 U.S.C.A. § 1962 (c), and that the predicate acts began in 2011 and continue until today.

### B. Procedural Background

On May 23, 2014, Plaintiff filed a complaint alleging breach of contract, fraud, and violations of both state and federal Racketeer Influenced Corrupt Organizations Acts ("RICO"). On July 11, 2014, Defendants filed an Answer to the Complaint. (Doc. 9). On August 7, 2014, Plaintiff moved for partial judgment on the pleadings on his breach of contract claim, alleging that Defendants admitted default in their Answer. (Doc. 13). On August 15, 2014, Defendants filed a Motion for Sanctions, in part on the grounds that Plaintiff's federal RICO claim is not warranted by existing federal law or by a non-frivolous argument for extending, modifying, or reversing existing law. (Doc. 14).  Lastly, on May 19, 2014, the Defendants moved to dismiss Plaintiff's Complaint for failure to state a claim in regard to the federal RICO claim.  (Doc. 19). In their motion, Defendants urge that once the RICO claim is dismissed, this Court should decline to exercise jurisdiction over the remaining state law claims. *Id.*  Plaintiff opposes Defendants' Motion to Dismiss by stating that Defendants raised their jurisdiction defense in an

untimely manner.  (Doc. 21).   All matters before this Court have been fully briefed and are ripe for review.

## II.    ANALYSIS

### A.  Defendants' Motion to Dismiss

#### 1.  Standard

Federal Rule of Civil Procedure 12(b)(6) allows for a case to be dismissed for "failure to state a claim upon which relief can be granted."[1] Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). To avoid dismissal under Rule 12(b)(6) a "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Greenberg v. The Life Insurance Company of Virginia,* 177 F.3d 507, 515 (6th Cir.1999); *Wittstock v. Mark A. Van Sile, Inc.,* 330 F.3d 899, 902 (6th Cir.2003); *Tahfs v. Proctor,* 316 F.3d 584, 590 (6th Cir.2003) (same).

Under Rule 12(b)(6) the Court must construe the complaint in the light most favorable to the nonmoving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield,* 552 F.3d 430, 434 (6th Cir.2008); *Murphy v. Sofamor Danek Gp., Inc.,* 123 F.3d 394, 400 (6th Cir.1997). The Court is not required, however, to accept as true mere legal

---

[1] The Court notes that Defendants' motion to dismiss is actually a motion for judgment on the pleadings pursuant to Rule 12(c) because it was filed after the filing of an answer. Since the standard of review for a judgment on the pleadings is the same as that for determining a motion to dismiss, *see Lindsay v. Yates,* 498 F.3d 434, 437 n 5 (6th Cir.2007), this Court construes Defendants' motion as one for a judgment on the pleadings, which may be brought after pleadings are closed, but early enough so as not to delay trial. *See Trapp v. Kimpel*, No. 3:13-CV-18, 2013 WL 4510570, at *1 (S.D. Ohio Aug. 23, 2013) (construing a motion to dismiss under 12(b)(6) filed after the filing of an answer as a motion for judgment on the pleadings); *Shoucair v. Williams*, No. 07-12964, 2010 WL 5015348, at *2 (E.D. Mich. Oct. 27, 2010*) report and recommendation adopted,* No. 07-12964, 2010 WL 5014378 (E.D. Mich. Dec. 3, 2010) (same).

conclusions unsupported by factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*citing Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). While a complaint need not contain "detailed factual allegations," its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 544, 127 S.Ct. at 1964. A complaint that suggests "the mere possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief." *Iqbal,* 129 S.Ct. at 1950 (*citing Twombly,* 550 U.S at 556, 127 S.Ct. 1955).

## 2. Plaintiff's Federal RICO Claim—COUNTS III-V

In Count V of Plaintiff's Complaint, he alleges a violation of the federal RICO statute, 18 U.S.C. § 1962(c).[2] Under 18 U.S.C. § 1964, RICO provides a private right of action to individuals "injured in his business or property by reason of violation of section §1962 . . . ." Under 18 U.S.C. § 1962(c):

> [it is] unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To state a claim for a violation of §1962(c), therefore, a plaintiff must plead: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Heinrichs v. Dunn,* No. 2:13-CV-00929, 2014 WL 3572404, at *10 (S.D. Ohio July 21, 2014) (Marbley, J) (citing *Moon v. Harrison Piping Supply,* 465 F.3d 719, 723 (6th Cir.2006) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985)). Further, a plaintiff alleging a RICO violation "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima*, 473 U.S. at 496).

---

[2] This Court notes that Counts III, IV, and V of Plaintiff's Complaint, taken together, contain a single federal civil RICO claim. This opinion addresses all three counts, but will refer to them collectively as "Count V."

A "pattern of racketeering activity" is defined by RICO as requiring at least two acts of racketeering activity, occurring within ten years of each other. 18 U.S.C. §1961(5); *Heinrichs*, 2014 WL 3572404, at *10 (internal citations omitted). Crimes which constitute "racketeering activity" for the purposes of a RICO claim are listed under 18 U.S.C. § 1961(1) and are commonly referred to as "predicate acts." Potential predicate acts include mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343), which are the two types of predicate acts alleged in the Plaintiff's Complaint.

While two predicate acts are necessary, they may not be sufficient. *Id.* (internal citations omitted); *see also H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 238, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) ("there is something to a RICO pattern beyond the number of predicate acts involved."). Rather, a plaintiff must show both that the predicate acts are "related" and also "that they constitute or pose a threat of continued criminal activity." *H.J. Inc.,* 492 U.S. at 239, 109 S.Ct. 2893 (emphasis added). It is this notion of "continuity plus relationship" which combines to produce a "pattern" of racketeering activity under RICO. *Thermodyn Corp. v. 3M Co.*, 593 F. Supp. 2d 972, 981 (N.D. Ohio 2008) (citing *Moon v. Harrison Piping Supply,* 465 F.3d 719, 724 (6th Cir.2006)).

Defendants argue that Plaintiff fails properly to plead any of the predicate acts of wire and mail fraud, and further argues that Plaintiff fails to plead that the predicate acts constitute a pattern of conduct cognizable under RICO. This Court finds Defendants' arguments well taken. Plaintiff fails to plead sufficient facts showing a "pattern of racketeering activity;" thus, the Plaintiff's federal RICO claim cannot stand. Accordingly, this Court need not address whether Plaintiff met the other requisite elements of his RICO claim.

### a. Predicate Acts

Mail fraud consists of a (1) a scheme to defraud; and (2) using the mail system in furtherance of the scheme. *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012).  The elements of wire fraud are essentially the same, but through use of the wires, instead of the mail. *Id.*  When alleging mail or wire fraud as the predicate offenses of a RICO claim, the plaintiff must satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b); thus, the circumstances constituting fraud or mistake must be stated with particularity. *See Heinrichs,* 2014 WL 3572404, at *10 (internal citations omitted).  Accordingly, allegations of fraud, which are merely bare assertions of legal conclusions, will not satisfy the requirements of a RICO claim based on mail or wire fraud allegations.  *Id.* (internal citations omitted).

To satisfy Rule 9 when pleading predicate acts of main or wire fraud, the complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Heinrich*, 668 F.3d at 404.  Moreover, in proving a "scheme to defraud" under mail and wire fraud, the plaintiff must assert a plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, reputation, or promises. *Id*. Additionally, Plaintiff must show scienter; that the defendant acted with specific intent to defraud or acted with recklessness with respect to potentially misleading information. *Id.*  Finally, a Plaintiff must show not only that a predicate act was a "but for" cause of plaintiff's injuries, but also that it was a proximate cause. *Id.*

Plaintiff's complaint alleges the Defendants engage in a racketeering enterprise with the following fraudulent scheme: (1) to operate facially legal entities, LACC and Amazing Kidz, to defraud the State of Ohio and individuals such as the Plaintiff; (2) attract clients by

7

misrepresenting who operates and controls LACC and Amazing Kids; and, (3) to use funds illegally obtained from the state to enrich Freeman, circumvent the Ohio law preventing convicted felons from operating daycare centers, and to avoid paying creditors, such as Plaintiff, by channeling funds through Amazing Kidz. The Complaint alleges that the Defendants used the mail and wires to further this scheme in the following ways: (1) used mails and wires to receive money unlawfully from ODJFS and to deposit that money into financial institutions engaged in interstate commerce; (2) used telephone calls and mail in the regular course of business to communicate within the enterprise, and to obtain transfers of funds from ODJFS; and (3) used the telephone to induce Mr. Prater into making a loan to LACC. These alleged predicate acts of mail and wire fraud lack the specificity required to meet Rule 9(b)'s heightened pleading standard.

First, the Complaint alleges that LACC, Freeman, and McKinney committed fraud against the Plaintiff by signing the June 22, 2012 cognovit note promising to make payment, when they had no intention of repaying as agreed. The complaint alleges that this amounts to wire fraud because the Defendants used the telephone to "fraudulently induce" Plaintiff into loaning LACC money; but Plaintiff provides no further facts to support this claim.  (Doc. 1 at 10-11). This allegation fails meet the Rule 9 standard because it fails to identify any fraudulent statement Defendants used to induce Plaintiff to sign the note, fails to explain why such statements were fraudulent, and fails to provide where and when the fraudulent statements were made. *See Heinrich,* 668 F.3d at 404 (rejecting wire fraud claim in part because plaintiffs failed to plead the date she received an allegedly fraudulent email from the defendants); *Smith-Hutchinson v. ITS Fin. LLC.,* No. 3:13-CV-192, 2014 WL 4748622, at *3-4 (S.D. Ohio Sept. 23, 2014) (finding no allegations in the complaint to detail what false and fraudulent claims were

transmitted, thus the plaintiffs failed to meet the particularity pleading standard for mail or wire fraud); *Arnold v. Alphatec Spine, Inc.*, No. 1:13-CV-714, 2014 WL 2896838, at *8-13 (S.D. Ohio June 26, 2014) (dismissing mail and wire fraud claim because complaint failed to identify the precise false statement or speaker of the false statement); *Baird v. Daniels,* No. 1:12-CV-945, 2014 WL 1407945, at *6-7 (S.D. Ohio Apr. 11, 2014) (dismissing mail fraud claims because plaintiff "failed to pinpoint the date of any document or allege the substantive misrepresentations contained therein.").

Moreover, the complaint fails to "set [ ] forth specific facts that make it reasonable to believe that [the] defendant knew that a statement was materially false or misleading," at the time it was made. *Heinrich,* 668 F.3d at 404 (internal citations omitted). This Court cannot infer from the complaint that Defendants had scienter fraudulently to induce Plaintiff into signing a note they never intended to pay, simply because they signed a note, and then they failed to pay. Such facts amount to bare conclusions that the defendants "knew" the statement that they would pay was false, and, as such, Plaintiff's Complaint does not meet Rule 9 heightened pleading standards. *See Arnold,* 2014 WL 2896838, at *8-13 (requiring plaintiffs to specifically plead scienter beyond a bare conclusion that defendants "knew" the statements were false).

Plaintiff alleges a second predicate act of wire fraud by stating that Defendants fraudulently used Amazing Kidz to divert funds owed to LACC by ODJFS and to avoid payment to Plaintiff. Such an allegation of wire fraud fails for the same reasons as the first alleged predicate act: it fails to identify with any specificity the elements required to plead wire fraud. *Heinrich,* 668 F.3d at 404. Plaintiff's bare allegation suggests nothing more than that the Defendants failed to pay the cognovit note, although they possessed money in a bank account over which they had control. As pled, the second alleged predicate act is essentially the same as

9

the first alleged predicate act—they both merely allege that Defendants failed to pay the cognovit note, but nothing more.

The only remaining predicate act alleged in the complaint relates to Defendants' defrauding of ODJFS by using McKinney as a conduit to receive payments by wire from ODJFS, which Freeman cannot receive because she is a convicted felon. Plaintiff fails to plead the final predicate act for the same reasons the preceding two predicate acts failed: the complaint does not allege any statement used to defraud ODJFS, any speaker of such statement, or the date of such statement, let alone scienter or but-for causation. *See Heinrich*, 668 F.3d at 404

### b. Relatedness and Continuity

In addition to pleading insufficiently the three predicate acts, Plaintiff fails to plead facts showing a pattern of racketeering activity, because he fails to plead facts showing the predicate acts he alleges are "related" and also "that they constitute or pose a threat of continued criminal activity." *See H.J. Inc.,* 492 U.S. at 239, 109 S.Ct. 2893.

A Plaintiff may show that the predicate acts are related by alleging that they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Vild v. Visconsi*, 956 F.2d 560, 566 (6th Cir. 1992). In *Vild*, the Plaintiff alleged two different types of predicate acts constituting mail and wire fraud. *Id*. The first was a mail and wire fraud scheme perpetrated against the Plaintiff, designed to induce him to enter into a marketing agreement. *Id*. The second type of conduct alleged involved mail and wire fraud directed at ultimate purchasers of real estate interests; several states; "technical violations of laws regulating direct mail solicitation and marketing, misrepresentations about the status of one of the defendant business entities, and the use of illegal real estate contracts in Florida." *Id*.

The *Vild* Court found that these two predicate acts of mail and wire fraud schemes did not meet the "relatedness" prong of the "pattern of racketeering" test under RICO; though the acts were somehow interrelated, the court found the "two types of conduct ha[d] distinct and dissimilar 'purposes, results, participants, victims, or methods of commission.'" *Id*. (citing *H.J., Inc.,* 109 S.Ct. at 2901). The conduct directed at the Defendant had the purpose of inducing him to sign a marketing agreement, and the result of forcing him out of business. In contrast, the conduct directed toward the ultimate purchasers of real estate interests had the purpose of selling real estate without the use of middlemen, which resulted in allowing the Defendant to gain a market advantage. *Id*. at 566-7.

Applying *Vild* to the facts in this case, this Court finds that the two types of conduct Plaintiff alleges form the basis of a pattern of racketeering activity have distinct and dissimilar "purposes, results, participants, victims, or methods of commission;" thus, they are not "related" within the meaning of RICO. *Id*. at 566.  In the predicate act of wire fraud perpetrated against Plaintiff, he is the solitary victim; the purpose of the scheme was to obtain a loan to establish a day care center; and, the result of the scheme was a breach of contract harming only Plaintiff. In the second predicate act, ODJFS or the state is the victim; the purpose is to receive funds to maintain the daycare center; and, the result is that the state is allegedly paying funds to a recipient who is not rightfully eligible for such funds. Although the two predicate acts are related, in that they both relate to Defendants' relationship with the daycare centers, they are not related for the purposes of establishing a "pattern of racketeering" under RICO.

Further, not only does Plaintiff fail to show that the predicate acts are related, Plaintiff also fails to meet the continuity prong of the "pattern of racketeering activity" test.  A plaintiff may prove continuity by showing a series of past related acts occurring over an extended period

of time, or by showing that the prior acts "involve a distinct threat of long-term racketeering activity." *Vild*, 956 F.2d at 569. The fraudulent scheme perpetrated against Plaintiff involved the creation and then breach of the cognovit note, and thus presents no threat of long-term activity against Plaintiff, or anyone else. Although the alleged fraudulent scheme against ODJSF has no known end-point, "[a] civil plaintiff may not use one type of conduct (acts directed at him) to satisfy the relationship test, and then invoke a second type of conduct (unrelated acts directed at others) to fulfill the continuity test absent similar types of conduct and victims who are essentially in the same position." *Id*. at 570; *see also Kalitta Air, LLC*, 591 F. App'x at 347 n. 5). This Court has already determined that the alleged predicate act directed toward Plaintiff is unrelated to the act directed against ODJSF. Thus, even if Plaintiff had pled a predicate act against Plaintiff with requisite specificity, he could not rely on the unrelated predicate act perpetrated against ODJSF to meet the continuity prong of the pattern of "racketeering activity" test.

For the reasons stated above, Plaintiff fails to state a claim for a violation of federal RICO. Counts III-V are hereby **DISMISSED**.

### 3. State Law Claims—Decline to Exercise Supplemental Jurisdiction

This Court has dismissed Plaintiff's only claim over which it had original jurisdiction—Plaintiff's federal RICO claim (Counts III-V). Plaintiff has several remaining state law claims, including: Breach of Contract (Count I); Fraud (Count II); and, Ohio RICO (Count VI). Defendants urge this Court to exercise its discretion to decline to exercise supplemental jurisdiction over the remaining state law claims.

When a federal court dismisses claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction over the remaining claims. *See* 28 U.S.C. §

1367(c)(3)."Whether a district court should decide a pendent state-law claim after dismissing all claims over which it had original jurisdiction depends on a balancing of factors that include judicial economy, convenience, fairness, and comity."*Ferrette v. Cuyahoga Cnty. Bd. of Elections,* 105 F. App'x 722, 727 (6th Cir.2004) (citations and internal quotations omitted). Dismissal of claims providing original jurisdiction at an early stage in a case weighs strongly in favor of dismissing the remaining state-law claims. *Musson Theatrical Corp. v. Fed. Express Corp.,* 89 F.3d 1244, 1254–55 (6th Cir.1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed."); *Gaff v. Fed. Deposit Ins. Corp.,* 814 F.2d 311, 319 (6th Cir.1987) ("It is generally recognized that where, as in this case, federal issues are dismissed before trial, district courts should decline to exercise pendent jurisdiction over state law claims."); *Aschinger v. Columbus Showcase Co.,* 934 F.2d 1402, 1412 (6th Cir.1991) (only "overwhelming interests in judicial economy may allow a district court to properly exercise its discretion and decide a pendent state claim even if the federal claim has been dismissed before trial.").

At this early stage in the proceedings, well before discovery, summary judgment or trial, this Court finds no overwhelming interest in judicial economy sufficient to overcome the presumption that this Court should decline jurisdiction over the remaining state law claims, now that it has dismissed all federal claims. *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1413 (6th Cir. 1991) (finding that since a prerequisite for the existence of pendent jurisdiction is that the federal claims must have substance sufficient to confer subject matter jurisdiction in federal court, when a case is dismissed for failure to state a federal claim, the federal claims do not have substance sufficient to confer subject matter jurisdiction in federal court, thus weighing

13

against maintaining jurisdiction over any remaining pendent state law claims). Thus, this Court declines to exercise jurisdiction over Plaintiff's remaining state law claims.

As this Court has declined to exercise jurisdiction over Plaintiff's remaining state law claims, this case is hereby **DISMISSED**. Accordingly, Plaintiff Motion for Judgment on the Pleadings—which asks this Court to grant Plaintiff judgment in its favor on its breach of contract claim (Count I)—is hereby **MOOT**.

### B.  Defendants' Motion for Sanctions

Under Federal Rule of Civil Procedure 11, when a pleading is submitted to the court, a party or counsel certifies to the court that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Rule 11 was adopted to "require litigants to 'stop-and-think' before initially making legal or factual contentions."  Fed. R. Civ. P. 11 advisory committee notes (1993 Amendments).  The focus of the rule is narrow, concerned only with whether the attorney believes "on the basis of reasonable inquiry that there is a reasonable basis in law and fact for the position taken and that the paper is not filed for an improper purpose" at the time that the paper is signed. *Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir.1989).

If the Court determines that Rule 11(b) has been violated, the Court may impose appropriate sanctions on the attorneys or parties who violated the Rule or are responsible for the violation.  *See* Fed. R. Civ. P. 11(c). The standard for determining whether to impose sanctions is one of objective reasonableness.  *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir.2002) (recognizing that "the imposition of Rule 11 sanctions requires a showing of 'objectively unreasonable conduct' ") (*quoting United States v. Kouri-Perez*, 187 F.3d 1, 8 (1st Cir.1999)); *Union Planters Bank v. L & J Development Co., Inc.*, 115 F.3d 378, 384 (6th Cir.1997) (finding that the test for the imposition of Rule 11 sanctions is "whether the individual's conduct was reasonable under the circumstances") (citation omitted).

Defendants urge this Court to impose sanctions on Plaintiff pursuant to Fed. R. Civ. P. 11(c) on the grounds that the RICO claim in Plaintiff's Complaint was not well grounded in fact and not warranted by existing law at the time that it was filed.[3] Defendants' Motion for Sanctions reiterates the same arguments Defendants make in their Motion to Dismiss concerning Plaintiff's failure to plead all of the elements of a federal RICO claim. As stated above, Plaintiff indeed failed to state a claim under the federal RICO statute.

The Sixth Circuit has warned, however, that the district courts should to be "hesitant to determine that a party's complaint is in violation of Rule 11(b) when the suit is dismissed pursuant to Rule 12(b)(6) and there is nothing before the court, save the bare allegations of the complaint." *See Tahfs v. Proctor,* 316 F.3d 584, 594 (6th Cir.2003) (holding that while Plaintiff's attorney "should have realized that his suit was unlikely to survive a Rule 12(b)(6) motion absent more specific allegations of corruption, that alone would not warrant the imposition of

---

[3] Defendants' motion also moves this Court to order sanctions against Plaintiff on the ground that the Complaint contains factual allegations that Defendants defaced and broke windows of Plaintiff's building, which Defendants contend are allegations not based in any evidentiary support. This ground for sanctions relates only to state law claims in Plaintiff's complaint. As this Court has declined to exercise jurisdiction over Plaintiff's state law claims, this Court will only address Plaintiff's motion for sanctions as it relates to Plaintiff's dismissed federal claim.

15

sanctions"); *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*, No. CIV. 07-11140, 2007 WL 4548115, at *6 (E.D. Mich. Dec. 19, 2007) *aff'd sub nom. Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.,* 299 F. App'x 509 (6th Cir. 2008) (finding Rule 11(c) sanctions improper where "Plaintiff believed that some of its copyrighted materials had been infringed, and, like the plaintiff in *Tahfs,* hoped that discovery would fill in the complaint's shortcomings.); *Macomb Interceptor Drain Drainage Dist. v. Kilpatrick*, No. 11-13101, 2013 WL 501446, at *4-5 (E.D. Mich. Feb. 11, 2013) (finding Rule 11(c) sanctions improper after granting 12(b)(6) motion to dismiss even though Plaintiff failed to allege necessary elements of a quasi-contract claim.); *Levine v. JPMorgan Chase & Co.*, No. 13-C-498, 2013 WL 5745050, at *1 (E.D. Wis. Oct. 22, 2013) (rejecting request for Rule 11(c) sanctions even where Plaintiff's attorney eventually conceded that he could not state a claim under one of the counts in the complaint); *c.f. Schmidt v. Nat'l City Corp.*, No. 3:06-CV-209, 2008 WL 4057753, at *3 (E.D. Tenn. Aug. 26, 2008) (finding Rule 11(b) sanctions at motion to dismiss stage would be appropriate in a case where an attorney brought a private civil cause of action under a criminal statute, which is something any lawyer should know).

While Plaintiff's complaint failed to allege the predicate acts showing a pattern of racketeering with the requisite specificity, this Court finds that Plaintiff's federal RICO claim is not frivolous simply because it failed to state a claim. *See Levine*, 2013 WL 5745050, at *1. Although this Court found that Plaintiff could not make out a claim, based on the facts alleged in the Complaint, Plaintiff's RICO violation was not so "unjustified at the outset" as to warrant sanctions. *See Schmidt*, 2008 WL 4057753, at *3. "Sanctions should not be meted out liberally but should apply only in especially egregious cases". *Nat'l Bus. Dev. Servs*, 2007 WL 4548115,

at 6 *(citing Mapother & Mapother, P.S. C. v. Cooper,* 103 F.3d 472, 478 (6th Cir.1996). This case is not so egregious as to warrant sanctions. Accordingly, Defendants' Motion is **DENIED.**

### III.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**, (Doc. 19); Plaintiff's Motion for Partial Judgment on the Pleadings is **MOOT,** (Doc. 13); and, Defendants' Motion for Sanctions is **DENIED** in part and **MOOT** in part. (Doc. 14). This case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

**/s/ Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  March 27, 2015**